UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No.  05-262 (JGP) |
| : | |
| FIDEL DIAZ, : | |
| : | |
| **Defendant.** : | |

**SENTENCING MEMORANDUM**

On August 4, 2005, Mr. Fidel Diaz, the defendant, pled guilty to a one-count Information, charging him with Conspiracy to Commit Crimes Against the United States, in violation of 18 U.S.C. § 371.  He will appear before this Honorable Court for sentencing on November 17, 2005.  Mr. Diaz, through undersigned counsel, respectfully submits the following information for the Court's consideration in determining a reasonable sentence.

**Background**

Mr. Diaz faced many challenges in his life from the very outset.  He was born in Colter, CA and shortly thereafter placed into foster care by his natural parents.  He was raised by several foster families in the Los Angeles area.  He married his wife Hung in 1968 and they had their first child in 1969.  He dropped out of high school in order to assume financial responsibility for his new family.  In 1972, Mr. Diaz joined the Marine Corps and served in Japan during the tumultuous conflict in Vietnam.  He earned his high school diploma while serving on active duty. He was honorably discharged from the Marine Corps in 1975.  Unable to find work in the civilian economy, Mr. Diaz returned to the military, but enlisted in the U.S. Army this time, serving on active duty until 1985.

Upon leaving the Army, Mr. Diaz became a civil servant for the federal government, starting as a GS-7 and working in various capacities in military commands associated with U.S. Forces Korea.  In 1989 while the family was residing in Korea, Hung discovered physical problems which would eventually be diagnosed as breast cancer.  She struggled with breast cancer for ten years during which time she flew between Korea and California for radiation treatments while Mr. Diaz worked diligently in Korea to provide for his family.  Hung succumbed to cancer in 1999.

Mr. Diaz was understandably distraught over the death of his wife and he spent the years following her death in remorse.  Unfortunately, because of the high cost of ten years of cancer treatments not fully covered by health insurance, Mr. Diaz also found himself wallowing in debt, at one time up to $160,000 in unpaid medical bills.  Further compounding this dilemma, Mr. Diaz discovered that his wife had been a heavy gambler, and with her death, creditors came forward with receipts for payment totaling approximately $60,000 in addition to the medical debt.  He felt great pressure to pay off these debts because of the creditors overt threats that if he did not pay them, they would go to the commanding officer of Mr. Diaz's unit, ruining his career. Having lost his partner of thirty years and finding himself in a deep morass of debt, it was at this time that Mr. Diaz began drinking alcohol heavily.  He also began gambling in a desperate attempt to pay off Hung's creditors.  He successfully paid off his deceased wife's gambling debts, however he still faces persistent medical bills which is now six years after her death.

Mr. Diaz had two children by Hung, a 36-year old daughter and a 30-year old son.  He remarried in 2002.  His new wife, Yana, provides a caring, nurturing presence for Mr. Diaz, something he credits for turning his life around from drinking and gambling.  In addition to the

children he had with Hung, Mr. Diaz also has a 3-year old son by Yana. He has no prior arrests, no convictions, and no longer drinks nor gambles due to the influence of Yana. He had been working for Dreyer's Ice Cream but in October 2005 he was discharged due to his guilty plea.

### **Argument**

The Pre-Sentence Report calculates the applicable sentencing range under the United States Sentencing Guidelines (hereinafter "Guidelines") as a range of 30 to 37 months incarceration. There are no disputes to this calculation. However, in accordance with the plea agreement in this case, Mr. Diaz respectfully requests that the Court sentence him to a reasonable sentence.

Notwithstanding the agreements stated in the plea agreement, it should be noted, however, that the Guidelines are not mandatory, but merely advisory. While the plea agreement precludes Mr. Diaz from arguing that his base offense level should be adjusted for a sentence below the applicable guideline range, the factors identified in 18 U.S.C. § 3553(a) support Mr. Diaz's request that he be sentenced to a reasonable sentence. The Court must consider the Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a). United States v. Booker, ___U.S.___,125 S.Ct. 738, 764 (2005). These factors include: "The nature and circumstances of the offense and the history and characteristics of the defendant; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. 3553(a). Pursuant to 18 U.S.C. § 3661,

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

After considering all of the factors set forth in § 3553(a), the Court must impose a sentence "that reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s] the defendant with needed educational or vocational training and medical care." Id. at 765 (citing 18 U.S.C. § 3553(a)(2)). Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]." 18 U.S.C. § 3553(a).

When addressing the characteristics of Mr. Diaz, the Court should consider the factors in imposing sentence under 18 U.S.C. §3553(a).  The Court should note that Mr. Diaz had a difficult upbringing, being abandoned by his parents very shortly after birth.  He has taken noteworthy acceptance of responsibility throughout his life, up to and including the charged offense.  He worked diligently and faithfully as a federal government civil servant and provided steadfast loyalty to his wife during ten years of strain from fighting cancer.  He has absolutely no prior history of involvement in the criminal justice system.  The period of criminal activity appears to coincide with the time when he was trying to overcome the loss of his wife and appear to be an isolated desperate response to dealing with a mountain of debt from medical treatments and gambling losses.

Sentencing Mr. Diaz to a reasonable sentence is "sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, or effectively provide Mr. Diaz with needed educational or vocational training and medical care." See 18 U.S.C. § 3553(a).

### Conclusion

For all of the foregoing reasons and such other reasons as may be discussed at the sentencing hearing in this matter, Mr. Diaz respectfully submits that a reasonable sentence will adequately promote the relevant sentencing objectives at issue in this case.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
Danielle C. Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500